UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION

IN RE:                                              CASE NO.

CAFFE PIAZZA, INC.                                  05-00748-5-ATS

    DEBTOR

**ORDER ALLOWING APPLICATION FOR COMPENSATION**

The matter before the court is the chapter 7 trustee's application for authority to pay Douglas M. Gurkins of Country Boys Auction & Realty, Inc. an auctioneer commission. A hearing took place in Raleigh, North Carolina on June 28, 2005.

Caffe Piazza, Inc. filed a petition for relief under chapter 7 of the Bankruptcy Code on March 1, 2005, and Gregory B. Crampton was appointed trustee. The debtor filed its schedules on March 22, 2005, and on or around that same date Michael Gurkins of Country Boys made arrangements with the debtor's landlord to enter the debtor's premises and inspect the assets to be sold. Mr. Gurkins testified that he discussed the feasibility of conducting an auction at the premises (a retail mall), but the landlord refused. Because Mr. Gurkins had another auction of restaurant equipment scheduled on April 14, 2005, Mr. Gurkins made arrangements to pick up the equipment to be auctioned and transported it to Washington, North Carolina.

After Mr. Gurkins removed the items to be sold from the premises, Ralph Pisacane, a shareholder of the debtor, contacted the trustee's

office to inquire about the items that remained in the premises. Mr. Crampton, his paralegal, Phyllis Hill, and Mr. Gurkins met with Mr. Pisacane and his son at the restaurant premises to review the remaining items. Mr. Gurkins explained why he chose not to remove each specific item, Mr. Crampton indicated that he agreed with the decisions, and Mr. Crampton discussed with Mr. Pisacane his intent to abandon those items. These items included a walk-in cooler, a bar and wine racks, a sink, an ice maker, a beverage system, and dishwashing tables. Mr. Crampton and Mr. Gurkins contend that the walk-in cooler and bar and wine racks were left because the cost of removal would exceed any value they would bring to the estate, the sink was left because the landlord contended it was a fixture, and the ice maker, beverage system and dishwashing tables were left because they were leased items belonging to a third party.

After the parties walked through the property and discussed each item, Mr. Crampton explained to Mr. Pisacane that he planned to negotiate a waiver of an administrative rent claim with the landlord, and that he would use some of the remaining items as leverage. He then explained that he intended to abandon those items once the rent claim was negotiated, and told Mr. Pisacane that he was free to remove the items, but not to dispose of them, before the abandonment.[1]  Mr.

---

[1] When the parties met at the premises, Mr. Crampton discovered that Mr. Pisacane retained a key to the restaurant. After discussing the abandoned property, Mr. Crampton allowed Mr. Pisacane to keep the

Crampton did successfully negotiate a waiver of the administrative rent claim, and he filed a notice of abandonment that was allowed without objection.

The auction took place on April 14, 2005, and brought in proceeds of $20,797.50. To compensate the auctioneer, the trustee applied a commission of 10 percent ($2,079.75) plus reimbursement of expenses in the amount of $2,213.39 (constituting a pro rata share for advertising plus labor for removal and transportation of equipment and mileage). Mr. Pisacane objected to the auctioneer's compensation, questioning his decisions to leave certain equipment at the premises, contending that certain items were removed from the premises but did not appear at the auction, and asserting that the decision to conduct the auction sale in Washington, North Carolina added unreasonable transportation costs.

Specifically, Mr. Pisacane disagreed that the walk-in cooler, bar, and wine racks would cost more to remove than it would to sell, contending that instead Mr. Gurkins failed to remove them because he did not have enough truck space. There was no evidence, however, that Mr. Pisacane disagreed with the assessment of the removal issues related to these items when he walked through the premises with the trustee and Mr. Gurkins, nor did he object to the trustee's notice of abandonment. Mr. Pisacane also contended that the ice maker, beverage

---

key to remove any additional items. Neither Mr. Crampton nor Mr. Gurkins ever had a key to the premises.

system, and dishwashing tables were not leased, but were owned by the debtor, yet there was no evidence that he advised the trustee or Mr. Gurkins of this during the walk-through, nor did he object to the abandonment of these items. Mr. Pisacane testified that there were items picked up from the premises that were not sold at that auction, but Mr. Gurkins credibly testified that all the items he removed from the restaurant were sold.

Essentially, Mr. Pisacane contends that Mr. Gurkins exercised poor judgment in determining what assets should not be removed from the premises and sold for the benefit of the estate, and that Mr. Gurkins gave the trustee bad advice about the cost of removal compared to the potential value to the estate. Mr. Pisacane maintained that the auctioneer's real reason for leaving the items behind was a failure to adequately estimate the load and to provide sufficient truck space, and as a result the auctioneer should not receive his full commission.

A chapter 7 trustee is charged with maximizing the recovery to the bankruptcy estate. To perform this obligation, the trustee must exercise a certain degree of business judgment, and, when challenged, the court must consider whether that exercise of business judgment was reasonable at the time. The auctioneer has the same obligations to the estate, and must also exercise his business judgment. Here, the auctioneer and the trustee conferred about the items that were left in the premises and ultimately abandoned. The auctioneer and the trustee

4

also agreed that combining the assets with other restaurant equipment already scheduled for auction would benefit the estate.  The auctioneer's advice to Mr. Crampton was reasonable, and Mr. Crampton exercised his own business judgment in agreeing with Mr. Gurkins' assessment.  Mr. Gurkins then did as he was instructed by the trustee and sold the items the trustee chose not to abandon, bringing proceeds into the estate in the amount of $20,797.50.

Based on the foregoing, the trustee's application for authority to pay the auctioneer its commission in the amount of $2,079.75 and expenses in the amount of $2,213.39 is **ALLOWED.**

**SO ORDERED.**

**DATED:  July 5, 2005**

A. Thomas Small
United States Bankruptcy Judge